UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED NATURAL FOODS, INC.,

                                            Civil No. 24-2610 (JRT/DJF)

                Plaintiff,

v.

MICHAEL MACIEL,                  **MEMORANDUM OPINION AND ORDER DENYING MOTIONS TO DISMISS AND TRANSFER**

                Defendant.

---

Melissa Watton, **BEST & FLANAGAN**, 60 South Sixth Street, Suite 2700, Minneapolis, MN 55402, for Plaintiff.

Carl E. Christensen and Ryan Supple, **CHRISTENSEN SAMPSEL PLLC**, 305 North Fifth Avenue, Suite 375, Minneapolis, MN 55401, for Defendant.

Plaintiff United Natural Foods, Inc. ("UNFI") brings this action against Michael Maciel for unpaid debts owed to UNFI. Maciel moves to dismiss for lack of subject matter jurisdiction and improper venue. Alternatively, he asks the Court to transfer venue to California. However, the Court finds it has subject matter jurisdiction and that a forum selection clause allows venue to lie in the District of Minnesota. Accordingly, the Court will deny the motions and retain jurisdiction over the case.

### BACKGROUND

UNFI is a grocery wholesaler that supplies groceries to customers throughout the United States. (Am. Compl. ¶ 11, July 17, 2024, Docket No. 9.) UNFI is a Delaware corporation with a principal place of business in Rhode Island. (*Id.* ¶ 6.) Michael Maciel

is the CEO and LLC Manager of Geiger's Long Valley Market LLC ("Geiger's") in California. (*Id.* ¶¶ 7, 13.)  Maciel is a resident and citizen of California.  (*Id.* ¶ 8.)

After Geiger's accrued considerable debt with three of UNFI's subsidiaries—Albert's, Supervalu (or "Conventional"),[1] and Tony's Fine Foods—UNFI and Geiger's reached a Payment Agreement where Geiger's agreed to pay $362,089.35 over fifty-three weeks.  (*Id.* ¶ 14, Ex. A ("Payment Agreement") at 2.)  Maciel not only signed the Payment Agreement as CEO & LLC Manager of Geiger's, but he also personally guaranteed Geiger's debt to UNFI.  (*Id.* at 4; Am. Compl. ¶ 15, Ex. B ("Guaranty Agreement").)  That Guaranty Agreement's choice-of-law clause indicated Minnesota law would govern.  (Guaranty Agreement ¶ 16.)  The Guaranty Agreement also contained the following clause:

> Each of the undersigned irrevocably consents to the jurisdiction of the state and federal courts located in the State of Minnesota, waives any argument that venue in such forums is not [sic] and agrees that any such litigation initiated by such undersigned will be venued in such forums.

(*Id.*)

From May to September 2023, Geiger's made the required weekly payments on schedule, but thereafter the payments ceased.  (Am. Compl. ¶ 17.)  As of the time of the

---

[1] Parties refer to "Supervalu" and "Conventional" interchangeably.  It appears "Conventional" is a term that UNFI now uses to refer to the legacy Supervalu account after UNFI acquired Supervalu and merged its operations into UNFI. (*See* Decl. of Frank Murphy ¶¶ 4–5, Sept. 24, 2024, Docket No. 24.)

Amended Complaint, Geiger's still owed $258,654.01, a sum Maciel had personally guaranteed under the Guaranty Agreement. (*Id.* ¶¶ 18–20.)

UNFI then commenced this suit against both Geiger's and Maciel for breach of contract, quantum meruit, unjust enrichment, and promissory estoppel for the Defendants' failure to pay the debt in accordance with the Payment Agreement. (Compl. ¶¶ 18–63, July 2, 2024, Docket No. 1.)

Both Geiger's and Maciel filed a motion to dismiss for lack of jurisdiction or transfer venue, arguing (1) the Court lacked subject matter jurisdiction because there was no complete diversity, (2) the Court lacked personal jurisdiction over Geiger's, and (3) venue was improper. (Mot. Dismiss or Transfer Venue, Sept. 3, 2024, Docket No. 15.) However, UNFI then filed a notice of voluntary dismissal of Geiger's as a defendant, leaving Maciel as the only defendant in the case. (Notice Voluntary Dismissal, Sept. 4, 2024, Docket No. 22.) Maciel concedes the Court has personal jurisdiction over him and is no longer pursuing that defense.

## DISCUSSION

### I.   STANDARD OF REVIEW

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a court "must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Because Maciel lodges a factual attack, "the court considers matters outside the pleadings," and the non-moving party does not enjoy the benefit of Rule 12(b)(6)

safeguards. *Id.* (citations omitted). "The general rule is that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citations and internal quotation marks omitted).

A defendant who seeks dismissal for improper venue under Federal Rule of Civil Procedure 12(b)(3) "bears the burden of demonstrating that the plaintiff's chosen venue lacks a sufficient connection to the parties' dispute." *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-720, 2009 WL 1684428, at *2 (D. Minn. June 16, 2009) (citing *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947)). "To satisfy this burden, the defendant must submit affidavits or other evidence defeating venue in the chosen forum." *Luckey v. Alside, Inc.*, No. 15-2512, 2016 WL 1559569, at *2 (D. Minn. Apr. 18, 2016) (quotation omitted). The Court may therefore consider matters outside the pleadings, as relevant to the venue analysis. *Id.* The Court construes all facts in favor of the non-moving party. *Howard v. Judge L. Firm*, No. 09-1644, 2010 WL 2985686, at *2 (D. Minn. July 26, 2010).

## II. SUBJECT MATTER JURISDICTION

The Court must first decide if it has subject matter jurisdiction over this action. Because there are no federal questions, subject matter jurisdiction may only be based on diversity of citizenship between the parties.

Federal courts are courts of limited jurisdiction and may only act with "power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013).

Subject matter jurisdiction under 28 U.S.C. § 1332 exists when the amount in controversy is over $75,000 and there is "complete diversity" among the parties, meaning "no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010) (citation omitted). Corporations are deemed to be citizens of both the state of incorporation and the state of their principal place of business. 28 U.S.C. § 1332(c)(1).

There is no dispute that the amount in controversy is over $75,000. And at first blush, the diversity is similarly noncontroversial: UNFI is incorporated in Delaware and has its principal place of business in Rhode Island. Maciel is a citizen of California. Therefore, complete diversity seems evident.

However, Maciel suggests that because Geiger's debt was owed to UNFI's subsidiaries, 28 U.S.C. § 1359 divests the Court of jurisdiction, and the "attribution rule" destroys complete diversity. Each will be taken in turn.

28 U.S.C. § 1359 states that "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." The statute is meant to preclude corporations from assigning interests solely for the purpose of invoking a federal court's jurisdiction. *See Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 829–30 (1969) (finding that assignment for collection only, motivated by desire to make diversity jurisdiction available, falls within the "very core" of § 1359). But the Supreme Court has also held

that courts generally should not look through the citizenship of a corporation to its subsidiaries when determining citizenship for diversity jurisdiction. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005) ("Congress surely has not directed that a corporation, for diversity-of-citizenship purposes, shall be deemed to have acquired the citizenship of all or any of its affiliates.").

Here, Maciel questions UNFI's interest in the debt at issue, instead suggesting that UNFI was simply assigned the debt for the purposes of this litigation. But while the debt may have been originally owed to the subsidiaries, the record is clear that UNFI was directly involved in the various debt payment agreements from the beginning, as UNFI was party to both the Payment Agreement and the Guaranty Agreement. Additionally, there is simply no evidence that UNFI improperly spearheaded this litigation on behalf of its subsidiaries for the purpose of manufacturing diversity. Thus, the Court will look only to UNFI's citizenship for diversity purposes. UNFI is a citizen of Rhode Island and Delaware; Maciel is a citizen of California. Complete diversity exists, and the Court has subject matter jurisdiction.

Alternatively, Maciel presses the "attribution rule" to argue that the Court should nevertheless look through UNFI to examine the citizenship of its relevant subsidiaries.

The attribution rule is an invention of the Fifth Circuit and holds that where a corporate parent is sued for the acts of its subsidiary, attribution of the subsidiary's citizenship to the parent is appropriate to limit the exercise of diversity jurisdiction.

*Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 557 (5th Cir. 1985).  At least one district court judge in Minnesota has adopted that rule in the past.  *See Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1516 (D. Minn. 1996).  But "the attribution rule has never been adopted by the Eighth Circuit and has gained little traction outside of the Fifth Circuit." *Micek v. Mayo Clinic*, No. 21-0436, 2021 WL 5282755, at *8 (D. Minn. Nov. 12, 2021).  And while "some district courts have applied the rule, . . . for the most part, those courts have not examined the rule carefully nor addressed the shortcomings of the rule."  *Id.*

Even if the Court adopted the attribution rule, it would not neatly fit here.  The attribution rule is typically applied to defendants, and it typically is used to evaluate the alter egos of one subsidiary and one parent corporation, not the more complex three-subsidiary arrangement here.  Ultimately, nothing convinces the Court that the attribution rule would be appropriate here.

Overall, the Court finds it has subject matter jurisdiction because complete diversity exists among the remaining parties.

### III. VENUE

#### A. Venue is proper in the District of Minnesota.

The most complex issue is whether venue is proper for this case.  UNFI asserts that venue is proper in the District of Minnesota because the parties signed an agreement that included a forum selection clause.  Maciel disagrees, arguing that the forum selection clause only applies if venue is statutorily proper first.

Venue is proper by statute only in three cases:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  The third category is only available if there is no proper venue under the first two provisions.

Here, the only remaining defendant, Maciel, is a resident of California.  Therefore, venue is appropriate at least in California, and that appropriate venue renders the third provision inapplicable.  That means that venue can only be appropriate in Minnesota if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in Minnesota.

The record suggests very little, if any, connection to Minnesota.  Both the Payment Agreement and the Guaranty Agreement were signed and negotiated in California.  The agreement pertains to products and services provided to Geiger's in California.  And Maciel made payments under these agreements in California, or perhaps to UNFI in Rhode Island.  Indeed, the Amended Complaint does not mention any activity **whatsoever** that occurred in Minnesota.

Accordingly, venue is improper in the District of Minnesota under § 1391.

Still, UNFI argues that such a venue analysis is not necessary because the parties already consented to venue in the District of Minnesota.

As a baseline, a cascade of caselaw has made clear that when choosing between multiple venues that are all equally proper under § 1391, a court should generally enforce a forum selection clause. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991). But this case presents a different question: Is a forum selection clause enforceable if the chosen venue is improper under § 1391? In other words, can parties consent to bring suit in an improper venue? The answer is unclear.

Other than § 1391, two other statutes are implicated here. First is 28 U.S.C. § 1406(a), which governs dismissal when venue is improper:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Next is 28 U.S.C. § 1404(a) (emphasis added), which governs change of venue generally:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought **or to any district or division to which all parties have consented**.

What stands out in these three provisions—§ 1391, § 1406(a), and § 1404(a)—is the singular reference to consent. Section 1391 articulates three routes to declaring

venue proper, and consent is not one of them.  Section 1406(b) instructs the Court to dismiss if venue is improper or to transfer to another proper venue—but says nothing about transferring to a venue to which parties have consented.  Still, § 1404(a) permissively allows a court, in its discretion, to transfer to another proper venue **or** to a venue to which all parties have consented.

So where does that leave a case like this one, in which a plaintiff files suit in a venue that is improper under § 1391 but nevertheless consented to in a forum selection clause?  Taken literally, these three statutes seem to suggest an absurd answer.  Here, venue is unquestionably improper under § 1391.  Section 1406(a) therefore instructs the Court to dismiss or transfer to another proper venue.  But had this case been filed in California, § 1404(a) allows the federal court sitting in California to transfer the case to Minnesota because the District of Minnesota is one "to which all parties have consented."

This textual paradox has split courts, and the Supreme Court's precedent on these statutes do not fully answer the question at hand.

On the one hand, the Supreme Court has held that "[w]hether the parties entered into a contract containing a forum selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013).  That seems to suggest that the court should not enforce the forum selection clause if the chosen venue is improper under § 1391.  But on the other hand, the Supreme Court also held in the same case that

§ 1404(a) "permits transfer to any district where venue is also proper . . . **or** to any other district to which the parties have agreed by contract or stipulation." *Id.* at 59 (emphasis added).

*Atlantic Marine* was primarily concerned with whether a forum selection clause could render an otherwise proper venue under § 1391 improper under § 1406(a). It decided it could not. However, the Supreme Court seemed to assume without deciding that a court could transfer a case to a venue that failed the § 1391 test if the parties consented.

Such a reading makes sense with the plain reading of § 1404(a). Section 1404(a) allows a district court to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." And if a court could only transfer cases to venues that are proper (*i.e.*, "where it might have been brought"), the second part of the statute (*i.e.*, where "all parties have consented") would be rendered superfluous.

But that doesn't help us here. It simply reaffirms that if the case was filed in California, the case could be transferred to Minnesota. *See Law Applicable—Forum Selection Clauses*, 14D Fed. Prac. & Proc. Juris. § 3803.1 (4th ed.) (noting *Atlantic Marine* "did not address whether a valid forum selection clause might render proper a statutorily improper venue for purposes of applying 28 U.S.C.A. § 1404(a)").

That has left the district courts and circuits to fill in the gaps, and they have done so inconsistently. At least one court in the District of Minnesota has held that courts must ignore a forum selection clause if the venue is improper under § 1391. *See, e.g.*, *Hitachi Cap. Am. Corp. v. McCollum*, No. 19-2747, 2020 WL 3977229, at *11 (D. Minn. July 14, 2020) ("First, the Court must determine whether the District of Minnesota is a proper venue, without regard to the forum selection clause. This is because '[s]ection 1404(a) applies only if the initial federal forum is a proper venue,' pursuant to 28 U.S.C. § 1391." (quoting *In re RFC & ResCap Liquidating Trust Litig.*, No. 13-3451, 2015 WL 8082540, at *5 (D. Minn. Dec. 7, 2015))). Other courts across the country concur. *See, e.g.*, *G4S Tech., LLC v. WCC Cable, Inc.*, No. 8:17-182, 2017 WL 4564726, at *2 (D. Neb. Oct. 10, 2017) (noting the forum selection clause at issue could not render venue proper in the present district when such venue was improper under 28 U.S.C. § 1391).

But many other courts have disagreed. *See, e.g.*, *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-893, 2018 WL 1964180, at *8–9 (E.D. Tex. Apr. 25, 2018) (collecting cases); *MB Fin., Inc. v. Hart*, No. 17-8866, 2018 WL 3920715, at *3 (N.D. Ill. Aug. 16, 2018) (rejecting the argument that "venue can never be proper unless § 1391(b) is satisfied, regardless of a forum selection clause"); *Nymbus, Inc. v. Sharp*, No. 3:17-1113, 2018 WL 705003, at *6 (D. Conn. Feb. 5, 2018) (finding that consent to venue overrides the § 1391(b) rules, especially in light of "the clearly articulated policy of the Supreme Court favoring

enforcement of forum selection classes '[i]n all but the most unusual cases.'" (quoting *Atl. Marine Const. Co.*, 571 U.S. at 66)).

Overall, the Court agrees that the statutory language allows parties to consent to venue in Minnesota, even if Minnesota does not satisfy § 1391.  Primarily, as the *Huawei Technologies* court noted, adopting Maciel's approach here would make little practical sense:

> Under Defendants' reasoning, the Court would dismiss the case for improper venue allowing Plaintiffs to file in a place of a proper venue.  However, once filed in the proper venue, Plaintiffs could then, pursuant to the Supreme Court's holding in *Atlantic Marine*, move to transfer the case under 28 U.S.C. § 1404(a), which "permits transfer to any district where venue is proper . . . or to any other district to which the parties have agreed by contract or stipulation."

2018 WL 964180, at *9 (quoting *Atl. Marine Const. Co.*, 571 U.S. at 59).  The Court agrees with that analysis.  Even though the text of the statutes seems to create an odd loophole that would instruct this court to ignore a forum selection clause when venue is improper, the statute cannot mean what it says—because that reading would create the unnecessary extra step of filing the action in California only to transfer it to Minnesota. *See Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 454, (1989) ("Where the literal reading of a statutory term would compel an odd result, we must search for other evidence of congressional intent to lend the term its proper scope." (quotation omitted)).

Instead, the more natural reading is that the venue requirements under § 1391 can be waived by consent.  Venue, as a personal privilege, is a right which a party "may assert,

or may waive, at his election." *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939); *see also* Fed. R. Civ. P. 12(h)(1) (noting additional procedural circumstances in which a venue defense can be waived). If a party has waived a venue defense during or prior to the onset of litigation, a court need not reach the § 1391 test. So long as the contract is valid, the court should generally enforce it.

Therefore, the Court finds that venue is proper in the District of Minnesota and will not dismiss under § 1406.

### B.     The Court will not transfer venue under § 1404(a).

Even if venue is proper, Maciel asks the Court to override the forum selection clause and transfer the case to California.

The Court may transfer this case to a different proper venue "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). However, "[f]orum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid." *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999). Mere "inconvenience to a party is an insufficient basis to defeat an otherwise enforceable forum selection clause." *Id.* at 753. Instead, a party seeking to avoid his promise must demonstrate that proceeding in "the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Dominium Austin Partners, L.L.C. v. Emerson,* 248 F.3d 720, 727 (8th Cir. 2001) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).

Though litigating this case in California would be more convenient for the parties and the witnesses, the Court will enforce the forum selection clause because "[i]n all but the most unusual cases, . . . 'the interest of justice' is served by holding parties to their bargain." *Atl. Marine Const. Co.*, 571 U.S. at 66. This is especially true because the Guaranty Agreement also includes a choice-of-law provision that would require an application of Minnesota law as to the underlying contract dispute. *See also Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 586 (8th Cir. 2007) (demonstrating transfer under § 1404(a) also means California would apply Minnesota choice-of-law rules). Therefore, the Court declines to transfer this case to a California court.

## CONCLUSION

Maciel brings this motion to dismiss or transfer in a case about a contract dispute between a Rhode Island corporation and a California resident. Because there is complete diversity among the parties, the Court has subject matter jurisdiction. Because Maciel consented to it, the Court has personal jurisdiction over him. And because Maciel's prior consent to venue in the District of Minnesota overrides any objection to venue being improper under § 1391(b), venue is proper here. The Court exercises its discretion not to override the forum selection clause and transfer the case to California.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss or Transfer [Docket No. 15] is **DENIED**.

DATED:  April 7, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge